```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

RICARDO RODRIGUEZ,

                      Plaintiff,       **No. 6:17-cv-06048(MAT)**
                                                      **DECISION AND ORDER**
        -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                      Defendant.

## INTRODUCTION

Represented by counsel, Ricardo Rodriguez ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

## PROCEDURAL STATUS

On July 5, 2013, Plaintiff filed a Title II application for a period of disability and DIB. On July 31, 2013, Plaintiff filed a Title XVI application for SSI. In both applications, he alleged disability beginning March 4, 2013, due to depressive disorder, anxiety disorder, mood disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), hypertension, and low back pain. These claims were denied initially on September 25, 2013. Plaintiff filed

a request for a hearing which was conducted via videoconference on March 18, 2015, by administrative law judge Gregory M. Hamel ("the ALJ"). Plaintiff appeared with his attorney in Rochester, New York, and testified, as did Stephanie R. Archer, an impartial vocational expert ("the VE"). On May 15, 2015, the ALJ issued an unfavorable decision finding, *inter alia*, that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain postural and environmental limitations, including that he is limited to performing routine and repetitive tasks that require only occasional interaction with the general public and co-workers. The ALJ also found that Plaintiff can perform his past relevant work as a cleaner, packer, and warehouse worker, which are all medium exertional level, unskilled jobs.

Plaintiff's request for review was denied by the Appeals Council on March 25, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, and the Commissioner's motion is denied.

**DISCUSSION**

**I. Error in Weighing Treating Psychiatrist's Opinions**

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. However, an ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, so long as the ALJ sets forth the reasons for the determination. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Plaintiff's treating psychiatrist, Dr. Roma Fortuna of Strong Behavioral Health, completed two mental RFC questionnaires on Plaintiff's behalf. On April 16, 2014, Dr. Fortuna completed a mental RFC questionnaire (T.366-70), indicating that she has treated Plaintiff for mood disorder, PTSD,[1] and anxiety with thoughts of suicide, feelings of guilt or worthlessness, impairment

---

[1] The PTSD is the result of Plaintiff being sexually molested by one of his older cousins who used to babysit him. The abuse started in 1979 and lasted for several years, around the time he was in fourth grade. Plaintiff's PTSD symptoms include nightmares from which he wakes up screaming, sweating, and thinking his cousin is in the room and trying to hurt him. Plaintiff also has flashbacks which can be triggered by many things, including television shows. (T.22). The flashbacks can occur 2 to 3 times a week or up to 2 or 3 times a day. (T.23).

in impulse control, generalized persistent anxiety, mood disturbance, difficulty concentrating, recurrent recollections of trauma, psychomotor agitation, disturbances in mood, unstable interpersonal relationships, and emotional lability. In regards to his ability to work, Dr. Fortuna assessed that Plaintiff was "limited" or "seriously limited" in his ability to maintain attention for two hour segments; work in coordination with, or proximity to, others without being distracted; complete a normal 8-hour workday; perform at a consistent pace; accept instructions; get along with coworkers; and deal with normal work stress. Dr. Fortuna opined that Plaintiff would be "unable to meet" competitive employment standards for dealing with the stress of a typical work-day, and that his impairments would cause him to miss about 4 days per month of work.

Dr. Fortuna completed a second questionnaire on February 19, 2015 (T.502-07), indicating that Plaintiff's current Global Assessment of Functioning ("GAF") was 40, with his highest GAF in the past year being 50.

The ALJ gave "little weight" to both of Dr. Fortuna's reports. The ALJ noted that in 2014, Dr. Fortuna found that Plaintiff was "limited or seriously limited in almost all activities required for unskilled, semiskilled and skilled work," but in 2015, she found that he was "seriously limited or completely unable to perform almost all activities required for unskilled, semiskilled, and

skilled work." According to the ALJ, "[t]here [was] no explanation as to why the claimant's limitations [were] reported as more pronounced in [the 2015] report." However, Dr. Fortuna notes in the 2015 opinion that Plaintiff's "symptoms have been worsening over the past couple months." The ALJ found that Dr. Fortuna's opinions were "inconsistent with [Plaintiff]'s treatment records, which show [Plaintiff]'s symptoms have improved overtime [sic] with medication and therapy." The ALJ did not cite to the specific records he believed demonstrated improvement in Plaintiff's symptoms. Without identifying the alleged inconsistencies in the record, the ALJ did not provide any basis for rejecting Dr. Fortuna's opinions, and prevents the Court from conducting a meaningful review. *See, e.g., Ely v. Colvin,* No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016) ("[T]he ALJ's statement that the rejected opinions were "not supported by the record as a whole" is too conclusory to constitute a "good reason" to reject the treating psychiatrist's opinions. The ALJ does not identify anything in the record, other than the GAF scores, discussed below, that is inconsistent with Rodic's opinions.") (citing, *inter alia*, *Crossman v. Astrue,* 783 F. Supp.2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was "inconsistent with the evidence and record as a whole" was "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quotation omitted)).

-5-

The Court has reviewed the available records, and while Plaintiff attended his psychiatric and counseling appointments regularly and participated willingly in therapy, the records demonstrate that Plaintiff continued to have significant psychiatric symptoms. On August 22, 2014, for instance, Plaintiff presented as "anxious" and reported to his therapist that he had shaved off his eyebrows the other day but denied knowing why he had shaved them. (T.467). He had experienced vague thoughts of hanging himself the previous week but did not act on those thoughts. (*Id.*). The Court notes, however, that there appears to be a slight gap in the administrative transcript with regard to treatment records from Strong Behavioral Health after August 22, 2014, up until Dr. Fortuna's February 2015 mental RFC questionnaire. The last treatment note from Strong Behavioral Health, quoted in Plaintiff's Memorandum of Law ("Pl's Mem.") (Docket #9-1), is September 15, 2014. On that date Plaintiff had a psychotherapy session, and his therapist noted that Plaintiff continued to ruminate over past events, had intrusive thoughts about his past, and had "no real change" in decreasing anxiety or impulsive responses to emotions. (Pl's Mem. at 20). Plaintiff indicates that these treatment notes are located at pages 494 through 496 of the administrative transcript. However, this is incorrect, as pages 494 through 496 of the administrative transcript are notes from Dr. Peter Creigh at Strong Memorial Hospital Neurology dated March 4, 2014, for follow-

up regarding Plaintiff's tic disorder. (T.494-96). Dr. Creigh noted that Plaintiff continued to experience a "significant mood disorder" in addition to his tic disorder and his other symptoms which were suggestive of Tourette's syndrome. (T.496).

The ALJ's purported reasons for discounting Dr. Fortuna's opinions are legally erroneous and not based on substantial evidence. They reflect an abdication of his duty to develop the record by obtaining all pertinent records and by recontacting the treating source if he required clarification about her opinion. *See*, *e.g.*, *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998) ("[W]hen an ALJ believes that a treating physician's opinion . . . is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor."); *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information . . . *sua sponte*."); *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp.2d 496, 505 (S.D.N.Y. 2014) ("The applicable regulations required the ALJ to recontact Dr. Bogard. Even under the current amended regulations, which give an ALJ more discretion to 'determine the best way to resolve the inconsistency or insufficiency' based on the facts of the case, the first option is still to recontact the treating physician.") (citing 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1)

(2013); *Lowry v. Astrue*, 474 F. App'x 801, 805 n. 2 (2d Cir. 2012); footnote omitted).

This error cannot be harmless, as Dr. Fortuna's description of Plaintiff's symptoms are consistent with consultative psychologist Dr. Adam Brownfeld's notes and observations on August 27, 2013. Plaintiff reported that he was experiencing dysphoric moods, crying spells, and irritability. Although he denied current suicidal ideation, plan, or intent, his last suicidal ideation was two to three weeks ago. Plaintiff told Dr. Brownfeld that he is not allowed in his garage because he once measured the beam in his garage to determine how long the rope would have to be if he wanted to commit suicide. Plaintiff also reported that in the summer of 2012, he cut himself, and Dr. Brownfeld observed visible scars on his arm.

The ALJ accorded the opinion of consultative psychologist Dr. Adam Brownfeld "considerable weight." However, Dr. Brownfeld's report does not provide substantial evidence to support the RFC assessment, but rather is consistent with Dr. Fortuna's reports in many respects and is supportive of Plaintiff's disability claim. Dr. Brownfeld noted that throughout the consultative evaluation (T.245-49), Plaintiff "was manic, anxious, and tearful." (T.245). His affect "[v]aried between depressed and anxious," and his mood was "dysthymic." Plaintiff's attention and concentration were mildly impaired due to emotional distress secondary to anxiety. He

was able to count and do simple math but unable to do serial 3s correctly. Plaintiff's recent and remote memory skills were "[i]mpaired due to emotional distress secondary to anxiety. He was able to recall 3 out of 3 objects immediately and 1 out of 3 objects after a delay. He was able to recall 4 digits forward and 3 digits backward." Dr. Brownfeld, diagnosed Plaintiff with "bipolar disorder, severe with psychotic features." For his medical source statement, Dr. Brownfeld opined, in part as follows:

> *The claimant is moderately to markedly limited in relating adequately with others. The claimant is markedly limited in appropriately dealing with stress. These difficulties are caused by psychiatric deficits.* The results of the present evaluation appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

(T.249 (emphasis supplied)). While Dr. Fortuna's 2015 questionnaire is more restrictive than Dr. Brownfeld's 2013 assessment, at least with regard to Plaintiff's ability to remember and understand instructions, maintain attention, and make appropriate decisions,[2] the opinions are quite similar with regard to Plaintiff's limitations in handling stress and relating adequately with others. Moreover, Dr. Brownfeld's assessment of moderate to marked, and marked limitations in social functioning in the workplace raises

---

[2] Dr. Brownfeld assessed no evidence of limitation in following and understanding simple instructions and directions, performing simple tasks independently, and making appropriate decisions; and mild limitation in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks independently that do not require supervision. (T.249).

questions as to whether his opinion constitutes substantial evidence to support the ALJ's RFC assessment. *Cf., e.g., Seignious v. Colvin,* No. 6:15-CV-06065(MAT), 2016 WL 96219, at *3 (W.D.N.Y. Jan. 8, 2016) ("Dr. Toor's evaluation of 'moderate to severe' limitations is too vague, on its face, to constitute substantial evidence supporting the ALJ's conclusion that Plaintiff can perform the exertional requirements of sedentary work. . . . [C]ourts have found that even "moderate" limitations raise questions as to a claimant's ability to perform prolonged sitting or standing[.]") (internal and other citations omitted).

To the extent that the ALJ found that Plaintiff's daily activities were inconsistent with Dr. Fortuna's mental RFC questionnaires, the Court finds that this conclusion was the product of legal error and was not supported by substantial evidence. According to the ALJ, Plaintiff's daily activities "further undermin[ed]" his credibility; the ALJ recited that Plaintiff lives in a home with and cares for his mother, who has lupus and kidney failure, cooks and washes clothes, has no difficulties with performing personal care activities independently, shovels snow, sees his son on weekends, has visitors on the weekend, and mows the lawn "sometimes." First of all, Plaintiff is not claiming significant physical limitation and thus, being able to care for his mother, perform daily hygiene and self-care, cook and wash clothes, mow the lawn, and shovel snow has no

-10-

bearing on the mental portion of the RFC assessment that is at issue here. Plaintiff's limitations from his mental impairments affect his ability to engage in social interactions appropriately and maintain focus and attention. The only two daily activities mentioned by the ALJ that relate to those areas are Plaintiff's weekend visits with his son and other visitors. "There is nothing inherent in these activities that proves Plaintiff has the ability to perform '[t]he basic mental demands of competitive, remunerative, unskilled work[, which] include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[,]" SSR 85-15, much less to do so '8 hours a day, for 5 days a week, or an equivalent work schedule[,]'" *Harris v. Colvin*, 149 F. Supp.3d 435, 445 (W.D.N.Y. 2016) (quoting SSR 96–8p, 1996 WL 374184, at *2).

### B.  Erroneous Credibility Analysis

Plaintiff argues that the ALJ improperly speculated about why Plaintiff's earning record does not show earnings for three years (1988, 1989, or 1997) and why he worked for less than SGA in some years. The ALJ commented that Plaintiff's earning record "raises some questions as to whether the present lack of substantial gainful activity level income is related to his alleged impairments as opposed to other reasons" and "whether the claimant's continuing

unemployment is actually due to medical impairments." (T.21, 22). The Court agrees that based on pure speculation, the ALJ drew an adverse inference against Plaintiff's credibility.

Plaintiff's earnings record (T.178-91) shows that he started working when he was 16; that he had earnings every year from the ages of 20 to 26, and then from the ages of 28 to 43; and that he did earn less than SGA in a number of years. Plaintiff testified that the reason he had so many different jobs is that because he would be terminated for "not being able to follow instructions," "not being able to carry out simple tasks" and "pretty much going out of control for no reason." (T.51). Plaintiff's contemporaneous statements to his treatment providers are consistent with this testimony. In treatment notes from Plaintiff's June 14, 2013, appointment at Strong Behavioral Health, Plaintiff reports having lost jobs due to hyper-vigilance, panic attacks, and "feeling on edge." (T.256). He reported to one of his therapists that lost his last job in February 2013, after he got into three accidents in four months while driving a company truck; he attributed them to his tic disorder in which his limbs would twitch suddenly, causing the steering wheel to jerk uncontrollably. That employer also witnessed him having a panic attack and putting his fist through the car window. (T.251). He was let go after that and encouraged to obtain psychiatric treatment. The Court finds that the ALJ's discounting of Plaintiff's credibility based on the fact he had

less-than-SGA earnings in some years was not based on substantial evidence and resulted from a misapplication of the proper legal principles.

**C.   Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart,* 388 F.3d 377, 385–86 (2d Cir. 2004). As discussed above, the ALJ erred in applying the treating physician rule to the opinions offered by psychiatrist Dr. Fortuna, and failed to explain satisfactorily why her opinions were not afforded controlling weight by the ALJ, who gave controlling weight to the opinion of the consultative psychologist which was actually more consistent with Dr. Fortuna's opinions than not. The ALJ also relied on improper factors in discounting the severity of the limitations caused by Plaintiff's psychiatric impairments and in finding Plaintiff less than fully credible. Even without the few months of treatment notes from Strong Behavioral Health, substantial evidence exists in the record to warrant giving deference to the opinions of Plaintiff's treating

psychiatrist, and when that deference is accorded, a finding of disability is compelled. *See Spielberg v. Barnhart*, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . ."). In the present case, further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. *See Parker,* 626 F.2d at 235.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is legally erroneous and unsupported by substantial evidence. Accordingly, Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the Commissioner's decision is reversed and the matter remanded solely for calculation and payment of benefits. Defendant's Motion for Judgment on the Pleadings is denied. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 6, 2017
         Rochester, New York.